**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
SABAS MARTINEZ,

                    Plaintiff,

                -against-

THOMAS J. LOUGHREN, Commissioner of
The New York State Department of Corrections,
VINCENT F. DEMARCO, Suffolk County Sheriff,
CHARLES EWALD, Suffolk County Warden,
LT. ROLLINS OTTEN, SGT. ROBERT
PERAINO, SGT. KEVEIN KELLEY, SGT.
DENNIS HORL, SGT. RICHARD SCHENKMAN,
C.O. MATTHEW MANTHE, C.O. MATTHEW
GEREMIA, C.O. JOHN PURCELL, C.O. JOHN
STEIN, C.O. JOHN MURPHY, C.O. JASON
LIGHT, CRAIG ROSENBLATT, and
JOHN DOE Nos. 1 – 92, in their Individual and
Official Capacities,

                       Defendants.
----------------------------------------------------------X

                              **REPORT AND**
                         **RECOMMENDATION**

                        CV 13-1319 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**     **PRELIMINARY STATEMENT**

      *Pro se* Plaintiff Sabas Martinez ("Plaintiff") commenced an initial civil rights action on

March 8, 2013, pursuant to 42 U.S.C. §1983.  That matter was assigned case no. CV 13-1319.

Following many procedural twists and turns, including a lengthy stay of all proceedings, Plaintiff

filed another iteration of that complaint on September 15, 2016 under case no. CV 16-5268.  On

December 14, 2016, Judge Bianco consolidated both actions under case no. CV 13-1319 and

further directed that the complaints be consolidated as well.  *See* DE 111.  By the time of the

consolidation, Plaintiff had been granted permission to amend his original complaint several

times.  The most recent amendment, found at DE 100, is entitled "Second Amended Complaint."

However, as discussed in greater detail below, Judge Bianco thereafter struck some portions of the Second Amended Complaint. Although Judge Bianco consolidated the complaints, they were never merged into one pleading. For the sake of clarity in discussing the allegations asserted in each one, and so that the references are found with greater ease, the Court will refer to the modified Second Amended Complaint as "Compl. I" and the September 15, 2016 filing as "Compl. II."

Complaint I names as defendants Suffolk County Sheriff Vincent Demarco, Warden Charles Ewald, certain Suffolk County Corrections officers and supervisors, a "John Doe" Corrections supervisor, and multiple "John Doe" Corrections officers. Compl. I. In Complaint II, Plaintiff names as defendants over 100 individual corrections officers as well as the Commissioner of the New York State Department of Corrections Thomas Loughren, Suffolk County Sheriff DeMarco, and Suffolk County Warden Ewald. Compl. II. Both pleadings allege, among other things, violations of Plaintiff's rights under the First, Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution based on Plaintiff's time in custody at the Suffolk County Correctional Facility. *See* Compl. I at 3.

Defendant Thomas J. Loughren ("Defendant" or "Commissioner Loughren"), Commissioner of the New York State Department of Corrections, has moved to dismiss the Complaint as against him, pursuant to Fed. R. Civ. P. 12(b)(6). *See* Defendant Thomas J. Loughren's Motion to Dismiss ("Def.'s Mot.") [DE 132]. Plaintiff opposes the motion on the grounds that, among other things, the Defendant does not have a valid immunity defense under the Eleventh Amendment. *See* Plaintiff's Notice of Opposition to Dismiss ("Pl.'s Opp'n.") [DE 135]. On October 6, 2017, Judge Bianco referred Defendant Loughren's motion to dismiss to this Court for a Report and Recommendation as to whether the motion should be granted. *See*

DE 146.  For the reasons which follow, the Court respectfully recommends to Judge Bianco that the Defendant's motion to dismiss be GRANTED.

## II.   BACKGROUND

### A.   Allegations in the Complaints[1]

Defendant Loughran is the first-named defendant in Complaint II and defendant 66 in Complaint I.  Complaint I is 53 pages long, handwritten, and names 91 defendants.  Complaint II is approximately 65 pages long, is also handwritten, and names 112 defendants.  Many of the names and allegations are overlapping.  In the section of Complaint II where Plaintiff begins to set forth his claims, he states the following:

> This is a civil rights complaint pursuant to 42 U.S.C. §1983, brought by and on behalf of Natural Person, habitant of the land.  Sabas Martinez seeking compensatory damages, punitive damages & money damages, for physically assaults, sexual harassments, destruction of legal paper work, conspiracy. For constitutional deprivation of civil rights, interference with legal mail, going out & coming in, intentionaly abuse of excessive force, abuse of authority & power, defamation of character, accusation of murder, intentionally violation of civil law section 75.1.2.3 & 14(a) also intentional torture, punishment, racial discrimination, retaliations, violence, unlawful attacks, unlawful conducts deprivation of attend Spanish Catholic services and inhuman degrading treatment, ETC. ETC. "under-color"-of-law.  Against the above named defendants, mention herein in their individual and official capacities.
>
> *     *     *
>
> For violation of the Plaintiff constitutional rights sustain and secured, by the constitution, and international law, they are in violation of the First Amendment, Bill of Rights, Fourth Amendment.  Five Amendment, & clause of the Fourteenth Amendment of U.S.C.A. Deprivation of my Freedom of Speech, Deprivation of Liberty, and

---

[1]   All facts alleged by Plaintiff are assumed to be true for purposes of deciding Loughren's motion to dismiss and are construed in a light most favorable to Plaintiff as the non-moving party.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009); *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 425 (E.D.N.Y. 2012).

Property, deprivation of exhausting my remedys, deprivation of medical treatment, and religious catholic services. Ect.

Violation of the amendment Eight cruel and unusual Punishment against Plaintiff inflicted, physical disturbance, pain & Psychologically depress, violation of the Nineth Amendment, the certain constitutional rights. Had being construed, to damage deny & disparage by public servants/C.O.'s, employees, civilians retained by the People/Plaintiff, and violation of CPL: §195.0. Violation of the Ten amendment the power, authority abuse from SCCF, Jail, & C.O.C. public servants/c.o.'s, employees, civilians, Et, Al. Which is reserved respectively to the people/plaintiff. and habitants of the land. Violation of the Fourtheenth Amendment by deny the Plaintiff the equal protection of the Law, Ect.

The above named defendant(s) failed to have the adequate and the proper training or/and been qualified as a peace officials, public servants/c.o.'s, employees, civilians to protect the Natural Person, people/plaintiff [h]abitant of the land. Rights on a place where plaintiff supposed to be secure, protected, healthy and well being, and which his rights are secure by the United States of North America constitution and international law.

* * *

The defendant(s) while acting in they individual capacitys as and peace officials, public servants/c.o.'s, employee agents, and civilians of the Sheriffs department, on Suffolk County, Riverhead, State of New York, did arbitrarily violate Plaintiff, is physically body, personal property, defamation of character, seriously accusation of murder, Legal Mail tampering going out coming in, Retaliation, conspiracy, torture, punishment (physical violence), unhuman degrading treatment, unlawful acts, unlawful attacks, medical attention, racism. Racial Discrimination and from stoping to exhaust his remedys. Ect. & Religious catholic services.

Plaintiff sues defendants herein for threatened by conspiracy, retaliate, defamation of character, false accusation of murder, torture, punishments, use of excessive force, destroy of legal documents, personal property, items, deprive of religious services, physical assaults, sexual harassments, mail tampering, ETC.

4

Compl. II ¶¶ 1-3.[2]  After identifying the large number of defendant corrections officers as "John Doe" accompanied by their respective badge numbers, Plaintiff turns to the allegations against the individual groups of defendants.  For the sake of context, the Court provides the following information.

### 1.  *Allegations against Corrections Staff*

The vast majority of the allegations contained in Complaints I and II concern mistreatment of the Plaintiff at the hands of multiple corrections officers.  The occurrences of mistreatment Plaintiff describes can be divided into several groups which the Court summarizes below.  Plaintiff alleges that this mistreatment emanated from racial animus and was also in retaliation for his having filed internal grievances as well as one or more civil rights lawsuits. *See, e.g.*, Compl. II at 33, 40, 43, 53.

### a.  **Verbal Threats, Harassment, and Intimidation**

According to the Plaintiff, corrections officers "threatened" him on numerous occasions by accusing him of murder and telling his fellow inmates the crimes for which he was incarcerated.  *See, e.g.*, Compl. II at 21, 25-26, 31, 33, 35, 44.  Similarly, Plaintiff alleges that on multiple occasions, one or more corrections officers called him racially derogatory names, verbally harassed and threatened him, and challenged him to fight.  *See, e.g.*, *id*. at 25, 33, 36, 44-46, 47, 49-51.

---

[2]  The Court points out that at various times, Plaintiff numbers the paragraphs of his pleading while in other places, there are no paragraph designations, but rather a page number is found at the top-right corner of the page.  The Court will utilize the paragraph numbers where available and will cite the page numbers in the remaining instances.

### b.   Improper Physical Contact

Complaint II asserts that on several occasions, corrections staff made improper physical contact with Plaintiff.  For example, Plaintiff claims that on April 17, 2015, C.O. John Doe/Badge # 1591 "strip search[ed] me, and sexually touch[ed] my private parts in the full view of the female lieutenant and female floor sergeant."  Compl. II at 22.  Similarly, Plaintiff claims that on August 10, 2016, while pressed up against a wall at a corrections officer's command, he was sexually assaulted.  *Id*. at 52-53.  Plaintiff states the corrections sergeant "made me put my hands hi[gh]-up on the concrete wall [and] spread my legs, wide open, and [he] 'sexually assault[ed]' me, by grabbing my ass, and balls."  *Id.* at 52.

### c.   Improper Destruction of Property and Handling of Mail

Plaintiff alleges that on several occasions, corrections staff improperly disposed of or destroyed his personal property, including his legal paperwork.  For example, Plaintiff states that on August 30, 2015, during a cell frisk, a corrections officer threw "a cup of coca mix and cer[e]al on my face" and threw "away my religious catholic bible [and] stamps."  Compl. II at 28.  Plaintiff claims a similar event occurred on September 24, 2015, when his personal belongings were improperly disposed of.  *Id*. at 29.  During a routine "shake down" on April 10, 2016, at 7:30 p.m., Plaintiff contends that C.O. John Doe/Badge #1456 "started intentionally wet[t]ing my legal papers and personal property legal papers th[at] w[ere] going to [be] use[d] at my trial.  [H]e did this with the full view of one lieutenant, one floor sergeant, and security team."  *Id*. at 21.  Plaintiff also states that corrections staff threw his legal paperwork in the toilet.  *Id*. at 41-42.  Hand-in-hand with the allegations that corrections staff improperly destroyed his personal property, Plaintiff claims that his legal mail was frequently opened and read without his permission.  *See, e.g.*, Compl. II at 27-28, 41.

6

### d.  Spanish Language Religious Services and Other Privileges

At numerous points in Complaint II, Plaintiff alleges that corrections staff deprived him of his right to attend Spanish language Catholic religious services.  *See, e.g.*, Compl. II at 23, 27-28, 41-42.  Plaintiff also claims he was denied several other privileges.  Primarily, Plaintiff asserts that he was deprived of his "rights to inside rec[reation], outside rec[reation], use [of] the phone, [and] shower" – allegations which appear repeatedly throughout Complaint II.  Compl. II at 28; *see, e.g.*, *id.* at 24, 30, 45.  Part and parcel of this claim is Plaintiff's assertion that on several occasions, he was improperly and unnecessarily prevented from exiting his cell.  *See, e.g.*, *id.* at 32, 34-35.  Plaintiff also alleges that on several occasions he was denied medical attention.  *See, e.g.*, *id.* at 22.  As an example, Plaintiff claims that at one point, staff withheld medical attention for two weeks while he was suffering from food poisoning.  *Id.* at 40.  Further, Plaintiff maintains that he was denied legal assistance to which he was entitled, *see id.* at 23-34, and that the staff were unresponsive to his grievances.  *See, e.g.*, *id.* at 43.

### 2.  *Allegations against Loughren*

With respect to Defendant Loughren, Plaintiff asserts that "[t]he Commissioner of Corr. Acting as an official capacity 'under-color'-of-law, denied Plaintiff['s] request to move him out of Suffolk County Correctional Facility."  Compl. II at 39.  Plaintiff goes on to allege that

> Mr. J. Loughren is in conspiracy with [these] public servants, correction officers, civilians, and employees, etc. . . . [t]o cover up all the threats, physical assaults, sexual harassment, racism, racial discrimination, torture, punishment, retaliation, the use of excessive force, legal mail tampering, false accusation of murder[,] defamation of character, depriv[ation] [of] Plaintiff's [] religious catholic services, physical violence, the injuries, and for all the illegal actions, illegal conduct[], [and] wrong done by these public servants, correction officers, civilians[,] employees, etc. all at this facility.

The Commissioner etc. all 'failed' to grant Plaintiff['s] requests to change of venue or move him out of Suffolk County Correctional Facility Jail.

*Id.* Near the end of Complaint II, Plaintiff further states:

> Thomas J. Loughren, Commissioner of Corrections, with jurisdiction on Suffolk County Correctional Facility, Jail. . . . [has] 'failed' to properly take actions and economical reward the Plaintiff, for the threats, physical assaults, sexual harassment, racism, racial discrimination, torture, punishment, retaliation, the use of excessive force, 'physical violence,' the injuries and for all the illegal actions, illegal conduct[], [and] wrong done these public servants, correction officers, civilians, employees, etc. [ ] mention[ed] herein against the Plaintiff, at SCCF Jail.

> The Commissioner etc. all 'failed' to grant Plaintiff['s] requests, to change of venue or move him, out of Suffolk County Correctional Facility, Jail, custody, when his life is in danger . . . .

> The Commissioner Mr. Thomas J. Loughren is in conspiracy to cover up all the illegal acts and illegal conduct, the wrong done by these public servants, correction officers, as they hurt, injure and kill detainees, prisoners, and inmates, in custody of the Suffolk County Correctional Facility, Jail.

*Id.* at 56-57; *see* Compl. I at 43-44.

In addition to the conspiracy allegations, Plaintiff appears to assert a claim for failure to properly train and supervise in Complaint I:

> The commissioner . . . "failed" to grant plaintiff's requests, to change of venue or move him out of Suffolk County Correctional Facility Jail custody, when his life, is in danger for the only reason to trying to exhaust his remedies, and because the threats of racism, racial discrimination, retaliation's, torture . . . Have not stopped since his arrival into this institution.

> *   *   *

> As a result of Suffolk Sheriff Vincent F. DeMarco, Charles Ewald (Warden), and Thomas J. Loughren, Commissioner of Corrections failed in not properly training, and counsel these public servants and correction officers, at Riverhead Jail, to make sure they are properly qualified and certified and how they deal with detainees, prisoners,

and inmates, in custody at Suffolk County Correctional Facility, but under the lack of supervision of the above mentioned names who are responsibilities include observing and correcting officer's actions that inmates will be treated inhumane. Without the constant supervision by the commissioner of corrections and department of corrections, I the plaintiff, has sustained permanent physical and mental distress, and continued psychological depression. I am suffering from the internal pain intentionally inflicted on myself the plaintiff. Therefore I the plaintiff request to be compensated by the court of New York.

Compl. I at 43.

### B.    Relevant Procedural History

At the time he filed the initial version of Complaint I on March 8, 2013, Plaintiff also filed a motion for leave to proceed *in forma pauperis*. *See* DE 2.[3] Judge Bianco granted the motion on March 20, 2013. *See* DE 7. In an Order dated September 27, 2013, Judge Bianco then held this action in abeyance pending the resolution of the issue of Plaintiff's capacity to participate in his defense in a related state court criminal matter. *See* DE 31. Judge Bianco lifted the stay on September 15, 2015 and further directed that "plaintiff may file his amended complaint no later than November 7, 2014. Failure to file the amended complaint by that date will result in dismissal of plaintiff's case with prejudice." DE 55. During a November 14, 2014 telephone conference with Plaintiff and Defendants' counsel, this Court pointed out to the Plaintiff that no amended complaint had been filed in compliance with Judge Bianco's Order. *See* DE 61. At that time, Plaintiff insisted that he had filed an amended complaint in September 2014, although neither the Court nor Defendants' counsel had any record of receiving it. *Id*. Plaintiff was directed to re-send his amended complaint directly to the Court. *Id.*

---

[3]    Unless otherwise stated, all references to docket entries are those contained in CV 13-1319.

After some sporadic correspondence from the Plaintiff, the Suffolk County Defendants filed a letter on May 15, 2015 stating that the case should be dismissed since Plaintiff failed to comply with Judge Bianco's Order directing him to file the amended complaint by a specific date. DE 70. Based on Plaintiff's argument that he had in fact mailed the amended complaint previously, this Court issued an Order on June 5, 2015 informing Plaintiff that he was being given one final opportunity to submit his amended complaint. DE 72.

On August 10, 2015, Judge Bianco issued an Order directing the Clerk of the Court to docket the proposed amended complaint that had been docketed at DE 51 as the amended complaint in this action. DE 75. Judge Bianco deemed Plaintiff to be in compliance with his directive to file an amended complaint. *Id.* The Clerk of the Court docketed the amended complaint. *See* DE 76. The Court is compelled to point out that the amended complaint which appears at DE 76 is a 17-page pleading, accompanied by an *in forma pauperis* application. *Id.* Commissioner Loughren is not named as a defendant. In fact, his name does not appear anywhere in that document. *Id.* The Suffolk County Defendants filed their Answer to the Amended Complaint on August 27, 2015. DE 78.

During a November 6, 2015 telephone status conference, Plaintiff advised the Court that he was seeking to amend his complaint to add further incidents which had occurred at the jail. DE 83. Plaintiff was informed that he needed to request a pre-motion conference from Judge Bianco in order to do so. *Id.* On November 13, 2015, Plaintiff submitted a request to Judge Bianco asking for (1) a trial date, (2) a transfer to another facility because of his continued mistreatment, and (3) to amend his complaint a second time. DE 86.

On December 1, 2015, Plaintiff submitted a one-page motion in which he described, *inter alia*, several additional incidents of alleged mistreatment, and requested leave to amend his

complaint a second time to include claims regarding incidents from 2012 and 2013, in addition to

a claim against a New York State Supreme Court judge. *See* DE 87. Plaintiff also asked Judge

Bianco to set a trial or enter judgment on the pleadings in his favor or permission to amend his

complaint. *Id.* Judge Bianco directed Defendants' counsel to submit a response by March 10,

2016. *See* Electronic Order of February 25, 2016. Counsel for the Suffolk County Defendants

did so and urged the Court to deny Plaintiff's request to amend his complaint for a third time.

DE 91. On April 13, 2016 Judge Bianco granted one aspect of the motion and permitted the

Plaintiff to file an amended complain to include the single November 3, 2015 incident referenced

in Plaintiff's motion, but denied the remainder of the motion. DE 92. Specifically, Judge Bianco

stated:

> Plaintiff is cautioned that this second amended complaint replaces his
> prior amended complaint, and therefore all of the factual allegations
> supporting each of his claims against each defendant must be included
> the second amended complaint. The amended complaint must be
> clearly labeled "Second Amended Complaint," bear docket number 13-
> CV-1319 (JFB) (AKT), and be filed with the Court within thirty (30)
> days from the date of this Order.

*Id.*

After being granted an extension, Plaintiff filed his "Second Amended Complaint" on

June 14, 2016. *See* DE 100. That pleading is 49 pages long and names 91 defendants, including

Commissioner Loughren. *Id.* The Suffolk County Defendants filed a letter motion on July 7,

2016 seeking, among other things, to strike the Second Amended Complaint because Plaintiff

added four new incidents, a new defendant named Stein, and 49 new "John Doe" defendants.

DE 102. Judge Bianco granted a portion of the motion on July 11, 2016, stating that "claims

relating to the incidents that allegedly took place on January 16, 2014, July 1, 2014, July 31,

2014, and November 10, 2015, and newly named defendant John Stein and the 49 newly named

'John Doe' defendants are stricken from the Second Amended Complaint."  DE 103.  Judge Bianco added that "the pleadings in this case should be deemed 'final' and not subject to continued amendments."  *Id*.  The Suffolk County Defendants filed their Answer to the Second Amended Complaint on July 20, 2016.  DE 104.

As noted previously, Plaintiff filed a related case in September 2016 against substantially the same parties.  *See* DE 108.  On December 14, 2016, Judge Bianco consolidated both actions under case no. CV 13-1319 and directed that the complaints be consolidated as well.  *See* DE 111.  Consequently, the pleadings going forward at that time consisted of the complaint filed in the 2016 Loughren action combined with the Second Amended Complaint in the DeMarco matter, with certain items stricken by Judge Bianco.  The Suffolk County Defendants filed their Answer to the consolidated complaints on March 13, 2017.  DE 123.

On April 26, 2017, counsel for Defendant Loughren filed a Notice of Appearance [DE 127] and on the same day filed a letter request for a pre-motion conference [DE 128] to Judge Bianco for purposes of seeking to dismiss the action as to Commissioner Loughren.  Judge Bianco waived the pre-motion conference requirement and set a briefing schedule for Defendant Loughren's motion to dismiss.  DE 129.  Several weeks later, after the motion was fully briefed, and without seeking leave of the Court, Plaintiff filed a sur-reply on July 20, 2017.  *See* DE 139.  Judge Bianco referred Defendant Loughren's motion to this Court for a Report and Recommendation as to whether the motion should be granted.  *See* DE 146.

### C.    The Parties' Positions

#### 1.  *Loughren's Motion to Dismiss*

Loughren moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on several grounds.  At the outset, the Court points out that the brief submitted by Defendant's counsel

contains no statement of facts.  In addition, none of the four points contained in the "Argument" section cite any specific paragraph or page of Complaint I or Complaint II.  Counsel has left the job of citing to the pleadings to the Court -- a not particularly useful method of evaluating the claims Defendant seeks to dismiss.

Loughren's first argument is that the Eleventh Amendment to the United States Constitution bars any suit against him in his official capacity.  *See* Loughren's Memorandum of Law ("Def.'s Mem.") [DE 132-2] at 2-3.  Next, Loughren asserts that if he is being sued in his individual capacity, he is protected by qualified immunity,[4] since Plaintiff alleges no facts to show Loughren violated any of Plaintiff's clearly established constitutional rights.  *See id.* at 3-5. Additionally, Loughren contends that Plaintiff has in no way alleged any personal involvement to support a § 1983 damages claim, *see id.* at 6, and, notwithstanding anything else, Plaintiff's claims are simply too conclusory to support a cause of action for conspiracy.  *See id.* at 7.

### 2. *Plaintiff's Opposition*

Much like his pleadings, Plaintiff's Opposition is replete with conclusory assertions and standalone legal citations, to the point where it is difficult to ascertain a coherent argument. Plaintiff attempts to oppose each of the points of Loughren's Memorandum of Law.  Initially, Plaintiff appears to acknowledge that the Eleventh Amendment applies to actions against state officials where the relief granted would bind the state, *see* Pl.'s Opp'n. at 3; however, it is difficult to assess what Plaintiff's argument actually is with respect to the Eleventh Amendment. As to Loughren's qualified immunity defense, Plaintiff states that Loughren, "act[ed] [ ] on

---

[4]  Loughren points out that under the New York State Corrections Law, neither he nor the Commission of Corrections have the power to move Plaintiff to another facility, award him money, or review his individual grievances against the Suffolk County Correctional Facility.  *See* Mem. in Supp. at 3-5.

personal capacity, official capacity and individual capacity 'under-color-of-the-state-law' [ ] negligent[ly] did wrong acts against Plaintiff." *Id.* at 4. The thrust of Plaintiff's argument appears to be that Loughren exhibited "gross negligence" and/or "deliberate indifference" to Plaintiff's "federal rights," primarily by failing to correct the mistreatment Plaintiff claims he suffered at the Suffolk County Correctional Facility. *Id.* at 5. The remainder of Plaintiff's Opposition is difficult to decipher, but is largely made up of conclusory allegations that Loughren acted personally against Plaintiff, and that Plaintiff's complaint contains sufficient allegations to survive Loughren's motion to dismiss. *See id.* at 7-11.

### 3. *Loughren's Reply*

In a short Affirmation in Reply, Loughren argues that nothing in Plaintiff's Opposition contains "allegations regarding the personal involvement of Defendant Loughren. [Plaintiff] fails to specify how one member of a Commission, which meets monthly, should be personally liable for a local jails [*sic*] alleged failure to satisfy the Plaintiff's grievances. Moreover, Plaintiff fails to allege the requisite details necessary to plead a conspiracy among 'Loughren and his partners.'" Loughren's Affirmation in Reply ("Def.'s Repl.") [DE 136] at 1-2. Loughren also asserts that "Plaintiff's affidavit is simply a list of case annotations which are not used in any coherent manner and does nothing to create the elements necessary to support a pleading for any civil rights violations." *Id.* at 2.

## III.    STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe the complaint's claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); *Grullon v. City of*

*New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the Court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. First, district courts are to "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see id.* at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555)). Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556-57) (citations omitted).

In adjudicating a Rule 12(b)(6) motion, the Court must limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied heavily upon in the complaint and, thus, are rendered "integral" to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014). To the extent "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); *see Wrap-N-Pack, Inc. v. Eisenberg*, No. 04-cv-4887, 2007 WL 952069, at *5 (E.D.N.Y. Mar. 29, 2007).

In reviewing Plaintiff's pleadings, the Court also bears in mind that *pro se* filings are to be liberally construed. *Shin v. Queens Hosp. Ctr. in Jamaica*, No. 14-CV-7237, 2014 WL 7422664, at *3 (E.D.N.Y. Dec. 31, 2014). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court must therefore "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 890 (2d Cir.1994)). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Lomax v. Aegis Funding Corp.*, No. 9-2321, 2010 WL 1633440, at *2 (E.D.N.Y. Apr. 19, 2010) (quoting *Iwachiw v. N.Y. City Bd. of Educ.*, 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002)). Likewise, "mere conclusions of law or unwarranted deductions need not be accepted." *Alston v.*

16

*Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014) (internal quotation marks omitted).

## IV. DISCUSSION

### A. Preliminary Issue: Plaintiff's Improper Sur-Reply

As an initial matter, the Court notes that in addition to a Memorandum in Opposition to Loughren's motion, Plaintiff submitted a supplemental filing which he has titled "Reply Against the Affirmation." *See* DE 139. The Court construes this submission as a sur-reply. Plaintiff did not seek leave to submit this response, nor does it appear from the docket that this filing was in any way authorized by Judge Bianco. To the contrary, Judge Bianco's briefing schedule as set forth in DE 129 clearly does not contemplate a sur-reply. Similarly, neither Local Civil Rule 6.1 nor Judge Bianco's Individual Practice Rules contemplate sur-replies, let alone sur-replies filed without leave of the Court. *See Travelers Ins. Co. v. Buffalo Reinsurance Co.*, 735 F. Supp. 492, 495 (S.D.N.Y. 1990) ("[A] sur-reply memorandum shall not be accepted without *prior* leave of court.") (emphasis in original). Importantly, "Plaintiff's status as a *pro se* litigant does not relieve [him] of [his] obligation to adhere to all applicable procedural rules." *Guity v. Uniondale Union Free Sch. Dist.*, No. 15-CV-5693, 2017 WL 1233846, at *3 (E.D.N.Y. Mar. 31, 2017); *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[W]e should not excuse frivolous or vexatious filings by *pro se* litigants, and [ ] *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") (internal quotations and citations omitted). The Court, in its discretion, declines to consider Plaintiff's unauthorized sur-reply.

**B.**     **The Eleventh Amendment Bars Suits Against the Office of the Commissioner**

To the extent Plaintiff attempts to bring a § 1983 claim against Loughren in his official capacity, his claim is barred by the Eleventh Amendment.  The Eleventh Amendment to the United States Constitution bars any suit in law or equity in federal court by a citizen of a state against that state, "absent the state's consent to such a suit or Congressional abrogation of immunity."  *Bryant v. New York State Dep't of Correction Servs. Albany*, 146 F. Supp. 2d 422, 425 (S.D.N.Y. 2001) (citation omitted); U.S. CONST. amends. XI.  Importantly, "[l]awsuits against state officials in their official capacities are not lawsuits against these individuals but, rather, are lawsuits against the official's office.  As such, they are 'no different from a suit against the State itself.'"  *A.A. v. Bd. of Educ., Cent. Islip Union Free Sch. Dist.*, 196 F. Supp. 2d 259, 264 (E.D.N.Y. 2002) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).  For this reason, Plaintiff's suit against Loughren in his official capacity is actually a suit against the Commissioner of Corrections of New York, *i.e.*, the State of New York.  Absent consent to suit or congressional abrogation of immunity, such a suit is barred by the Eleventh Amendment.  *Kaplan v. New York State Dep't of Corr. Servs.*, No. 99 CIV. 5856, 2000 WL 959728, at *2 (S.D.N.Y. July 10, 2000) ("The law is clear that the state, and state agencies such as [the Department of Correction], are immune from prisoner § 1983 suits because of their Eleventh Amendment sovereign immunity; in addition, neither a state nor a state agency is a 'person' within the meaning of § 1983.") (citation omitted).  Neither consent nor congressional abrogation of immunity is present here, and the Court will therefore proceed under the assumption that Plaintiff brings his suit against Loughren in his individual capacity.

### C.    Plaintiff Fails to State a Section 1983 Claim as to Loughren

Plaintiff has sued over 100 defendants pursuant to 42 U.S.C. § 1983, seeking "injunctive relief, compensatory damages, punitive damages, and money damages" for "violation of the Plaintiff['s] constitutional rights."[5]  Compl. II at 3, 5.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979).  "For claims under section 1983, a plaintiff must prove that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States."  *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 316-17 (E.D.N.Y. 2014) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted)).

The Court is satisfied that Loughren, as the New York State Commissioner of Corrections, acts "under color of state law" with respect to inmates such as Plaintiff.  However, even assuming the pleadings plausibly alleges that Plaintiff was deprived of a constitutional right, they fail to establish an essential element of the required formula:  that the constitutional deprivation "was attributable at least in part" to Loughren.  *Kohutka*, 994 F. Supp. 2d at 317.

### 1.  *Personal Involvement:  Applicable Law*

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885

---

[5]    As to what constitutional rights they have violated, Plaintiff claims the defendants "are in violation of the First Amendment, Bill of Rights, Fourth Amendment, Fi[fth] Amendment, & clause of the Fourteenth Amendment . . . deprivation of my freedom of speech, deprivation of liberty, and property, deprivation of exhausting my remed[ies], deprivation of medical treatment, and religious catholic services etc."  Compl. II at 5.

(2d Cir.1991)).  Under Second Circuit precedent, a supervisory defendant may be found

personally involved in the deprivation of a plaintiff's rights in several ways:

> The defendant may have directly participated in the infraction . . . .
> A supervisory official, after learning of the violation through a
> report or appeal, may have failed to remedy the wrong . . . . A
> supervisory official may be liable because he or she created a policy
> or custom under which unconstitutional practices occurred, or
> allowed such a policy or custom to continue . . . . Lastly, a
> supervisory official may be personally liable if he or she was grossly
> negligent in managing subordinates who caused the unlawful
> condition or event . . . .

*Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted); *see Wright*, 21 F.3d

at 501.  "In addition, supervisory liability may be imposed where an official demonstrates 'gross

negligence' or 'deliberate indifference' to the constitutional rights of inmates by failing to act on

information indicating that unconstitutional practices are taking place."  *Wright*, 21 F.3d at 501

(citing *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir. 1983)).

Significantly, courts in this Circuit have determined that "members of the Commission of

Corrections are not *supervisory officials* of the New York State Correctional Facilities in any

sense factually or legally."  *Brody v. McMahon*, 684 F. Supp. 354, 355-56 (N.D.N.Y.), *aff'd*, 862

F.2d 304 (2d Cir. 1988) (emphasis in original).  Rather, under state law, the express function of

the Commission of Corrections "is one of adequate and effective oversight.  There is no hiring,

firing, or disciplinary power over any supervisory staff or personnel of the correctional facilities.

There is no direct power to control or direct the customs and policies of the facilities."  *Id.* at

356; *McDowell v. Stewart*, No. 9:06CV1060, 2008 WL 755291, at *4 (N.D.N.Y. Mar. 19, 2008)

("[M]embers of the Commission [of Corrections] are not endowed with any operational or

supervisory responsibilities of the . . . New York [DOCS] Facilit[ies] . . . and thus have no power

to control the internal policies or procedures of each institution.") (citation omitted); *see* N.Y.

Correct. Law § 139 (McKinney).

### 2.  *Application to the Complaint*

The limit of the Commissioner of Corrections' authority under state law weighs heavily

against a finding that Loughren is personally involved in any individual inmate's alleged

constitutional deprivation, including the Plaintiff's.  Notwithstanding this fact, and assuming

*arguendo* that Plaintiff can raise a § 1983 claim against Loughren as a "supervisory official,"

Plaintiff fails to plausibly suggest the existence of the requisite personal involvement for a

successful § 1983 claim.  Plaintiff's primary allegations as to Loughren occur on pages 39, 56,

and 57 of Complaint II.  Within these passages, the Court identifies three primary allegations:

(1) Loughren was "in conspiracy with [these] public servants, correction officers, civilians, and

employees, etc. . . . [t]o cover up all the threats, physical assaults, sexual harassment, racism,

racial discrimination, torture, punishment, retaliation," etc., Compl. II at 39; (2) Loughren

"'failed' to grant Plaintiff['s] requests, to change of venue or move him, out of Suffolk County

Correctional Facility," *id.* at 56-57; and (3) Loughren failed to redress alleged mistreatment

Plaintiff suffered at the Suffolk County Correctional Facility.  *See id.*  There is nothing in these

assertions to suggest that any alleged constitutional deprivation "was attributable at least in part"

to Loughren.  *Kohutka*, 994 F. Supp. 2d at 317.

The case of *Wright v. Smith*, 21 F.3d 496 (2d Cir. 1994) is instructive.  In *Wright*, a

prison inmate brought a § 1983 action against the prison superintendent and the New York

Commissioner of Corrections on the grounds that he was confined in segregated housing for 67

days without a hearing.  The Second Circuit found that, where a state mandates that a hearing

take place no later than 14 days after an inmate is placed in segregated housing, confinement

without a hearing for 67 days violates a constitutionally protected liberty interest for purposes of § 1983. *Wright*, 21 F.3d at 500. However, the plaintiff's allegation that the Commissioner of Corrections had received a letter from the plaintiff describing the conditions of his confinement was insufficient to establish the Commissioner's personal involvement in the deprivation, since the letter did not state that the plaintiff had been deprived of any rights with respect to a hearing. *See id.* Because of this, the Commissioner "was never put on actual or constructive notice of the violation." *Id.* Moreover, the plaintiff did "not allege that [the Commissioner] created a policy or custom under which the violation occurred or acted negligently in managing subordinates who caused the violation." *Id.* The court in *Wright* determined that the plaintiff failed to establish the Commissioner's personal involvement in the deprivation for § 1983 purposes, and accordingly upheld the district court's granting of summary judgment as to the Commissioner.

Unlike *Wright*, Plaintiff fails to allege any facts to support an inference that Loughren was on notice of *anything* with respect to Plaintiff, let alone of mistreatment or a constitutional deprivation. While Plaintiff alleges that he filed multiple internal grievances and requests to be transferred to a new facility, all of which were denied, *see, e.g.*, Compl. II at 39, 43, 49, there is nothing to indicate that any of these grievances or requests were seen by Loughren. Plaintiff's allegation that "[t]he Commissioner etc. all 'failed' to grant Plaintiff['s] requests, to change of venue," Compl. II at 56, is insufficient to plausibly suggest that Loughren personally reviewed and denied any of Plaintiff's grievances or requests. *See Ashcroft*, 556 U.S. at 679 ("[P]leadings that[ ] . . . are no more than conclusions, are not entitled to the assumption of truth."). Nor does Plaintiff plausibly allege that Loughren "created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue," nor that "he was grossly

negligent in managing subordinates who caused the unlawful condition or event." *Williams*, 781 F.2d at 323-24.

The Commissioner of Corrections cannot be held personally liable for an inmate's constitutional deprivation "simply because he was in a high position of authority in the prison system." *Wright*, 21 F.3d at 501 (citation omitted); *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) ("[P]laintiff's claim for monetary damages against [the Commissioner] requires a showing of more than linkage in the prison chain of command."). Because Plaintiff's pleadings fail to allege anything personally connecting Loughren to Plaintiff's alleged constitutional deprivations, the § 1983 damages claim against Loughren must fail.[6]

### D.    Plaintiff Fails to State any Cause of Action

While the allegations in Plaintiff's complaint are insufficient to sustain a § 1983 claim against Loughren for the reasons discussed, Plaintiff also fails to state any underlying cause of action upon which a § 1983 claim could be founded.

To the extent Plaintiff attempts to raise a claim against Loughren for conspiracy, this claim must fail. Plaintiff asserts that "[t]he Commissioner Mr. Thomas J. Loughren is in conspiracy to cover up all the illegal acts and illegal conduct, the wrong done by these public servants, correction officers, as they hurt, injure and kill detainees, prisoners, and inmates, in custody of the Suffolk County Correctional Facility, Jail." Compl. II at 57; *id.* at 39. "To prove

---

[6]    Related to this discussion is the important point that "[p]laintiffs challenging asserted deprivations of due process under 42 U.S.C. § 1983 must demonstrate, *inter alia,* that the defendant acted with more than mere negligence." *Grune v. Rodriguez*, 176 F.3d 27, 33 (2d Cir. 1999). To the extent that he raises a due process claim against Loughren, Plaintiff has failed to allege facts which support an inference that Loughren acted negligently, recklessly, intentionally, or with any level of mental culpability whatsoever with respect to Plaintiff. Indeed, it is hard to see how Loughren could be found culpable when Plaintiff fails to allege that Loughren was aware of Plaintiff or his alleged constitutional deprivations.

a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted). "A claim of a Section 1983 conspiracy must be supported by more than conclusory allegations. Specifically, a plaintiff must allege 'with some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy.'" *Myers v. Cty. of Nassau*, 825 F. Supp. 2d 359, 367 (E.D.N.Y. 2011) (quoting *Elmasri v. England,* 111 F. Supp. 2d 212, 218 (E.D.N.Y. 2000)); *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.") (citations omitted). Plaintiff's bare assertions and conclusory statements are insufficient to meet this standard, and to the extent Plaintiff attempts to raise a § 1983 conspiracy claim, that claim fails.

Any other claim Plaintiff attempts to raise against Loughren fails for similar reasons. Plaintiff's complaint as to Loughren consists exclusively of conclusory assertions that lack any factual support, and as such these assertions are not entitled to the presumption of truth. *See Ashcroft*, 556 U.S. at 679. All claims against Loughren fail accordingly.

### E.      Loughren is Protected by Qualified Immunity

Lastly, notwithstanding that any claim against Loughren must fail for several reasons, Loughren is protected from suit by qualified immunity. "[Q]ualified immunity 'shields government officials performing discretionary functions from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Shabazz v. Coughlin*, 852 F.2d 697, 700 (2d Cir. 1988) (quoting *Walsh v.*

*Franco*, 849 F.2d 66, 68 (2d Cir. 1988)).  When a defendant asserts qualified immunity, "a court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation."  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).  Plaintiff's pleadings here fail to make out a violation of any statutory or constitutional rights, clearly established or otherwise.  Loughren, as the Commissioner of Corrections, is therefore protected by qualified immunity.

## V.   CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Bianco that Defendant's motion to dismiss the complaint as to Commissioner Loughren be GRANTED.

## VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joseph F. Bianco and to the Chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**<u>Defendant Loughren's counsel is directed to serve a copy of this Report and</u>**

**<u>Recommendation upon the *pro se* Plaintiff forthwith by overnight mail and first-class mail,</u>**

**<u>and to file proof of such service on ECF</u>**.


Dated: Central Islip, New York
       March 8, 2018

**SO ORDERED**.


<u>/s/ A. Kathleen Tomlinson</u>
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge