UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------X
SABAS MARTINEZ,

        *Plaintiff*,

        v.

VINCENT F. DeMARCO *et al.*,

        *Defendants*.
--------------------------X

**MEMORANDUM & ORDER**

13-cv-1319(KAM)(SMG)

**KIYO A. MATSUMOTO, United States District Judge:**

        Before the Court is Defendants' unopposed motion for partial summary judgment.  (ECF No. 184.)  For the reasons herein, Defendants' motion for summary judgment is granted in part and denied without prejudice in part.  Summary judgment is granted on Plaintiff's Section 1983 claims based on the conditions of his confinement, the loss or destruction of his personal property, alleged verbal abuse by corrections officers, and on Plaintiff's claims against two of the named defendants, Suffolk County Sheriff Vincent DeMarco and Warden Charles Ewald. Defendants' motion for summary judgment with respect to Plaintiff's retaliation claim is denied without prejudice to renew.

**BACKGROUND**

        Sabas Martinez ("Plaintif") commenced this action *pro se* pursuant to 42 U.S.C. § 1983 ("Section 1983") in March 2013, seeking compensatory and punitive damages for alleged violations

of his civil rights by government officials while he was detained by the Suffolk County Sheriff's Office at the Riverhead Correctional Facility ("RCF") in New York.   (ECF No. 1.)[1] Plaintiff moved to proceed *in forma pauperis* (ECF No. 2), and his motion was granted (ECF No. 7).   Plaintiff subsequently filed amended complaints in August 2015 (ECF No. 76) and June 2016 (ECF No. 100).[2]   In September 2016, Plaintiff also filed a complaint in a separate case.   (Case No. 16-cv-5268, ECF No. 1.) The Court found the claims in the 16-cv-5268 action to be "largely duplicative" of the claims in this case, and ordered that 16-cv-5268 be consolidated with the instant case.   (ECF No. 111.)   The operative complaints from the two actions were never merged into one pleading.   Therefore, Plaintiff's second amended complaint in this case, filed in June 2016 ("Complaint I"), and his September 2016 complaint in 16-cv-5268 ("Complaint II") remain operative.   Both complaints named as defendants New York State Department of Corrections Commissioner Thomas Loughren, Suffolk County Sheriff Vincent DeMarco, Suffolk County Warden Charles Ewald, certain Suffolk County corrections officers and supervisors, and numerous "John Doe" corrections officers.

---

[1] Plaintiff is currently incarcerated at the Clinton Correctional Facility in Dannemora, New York.

[2] Plaintiff's June 2016 complaint sought to add several additional claims and defendants without permission of the Court.   Those claims and defendants were stricken by the Court in July 2016.   (ECF No. 103.)

Plaintiff's two complaints allege violations of Plaintiff's rights under the First, Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution based on incidents during Plaintiff's time in custody at RCF.  Taken together, the complaints consist of more than 110 pages, each listing separate incidents which allegedly occurred while Plaintiff was detained at RCF.  The alleged incidents can be grouped as allegations: (1) of physical assault by corrections officers, (2) of verbal abuse by corrections officers, (3) that Plaintiff was prevented from attending religious services while detained, (4) that Plaintiff was denied medical care while detained, (5) that Plaintiff's personal property was damaged or destroyed by corrections officers, (6) that Plaintiff was not provided with personal hygiene products or cleaning supplies while detained, (7) that Plaintiff was prevented from having access to recreation, the telephone, the law library, and showers while detained, (8) that corrections officers interfered with Plaintiff's visitation rights, and (9) that corrections officers retaliated against Plaintiff in response to the numerous grievances and lawsuits he filed.

## PROCEDURAL HISTORY

The Commissioner of the New York State Department of Corrections filed a motion to dismiss in May 2017 (ECF No. 132), which Plaintiff opposed (ECF No. 135).  The Court granted the

motion to dismiss (ECF No. 151), adopting a thorough and well-reasoned Report and Recommendation by Magistrate Judge Tomlinson (ECF No. 148).  With the claims against the Commissioner of the New York State Department of Corrections dismissed, only the claims against the Suffolk County officials remained.

In October 2019, the remaining Defendants filed the instant motion for partial summary judgment under Federal Rule of Civil Procedure 56.  (ECF No. 184.)  Defendants served Plaintiff with Notice of the motion, a memorandum of law, supporting exhibits, and the Notice to *pro se* parties required by Local Civil Rule 56.2.  (ECF No. 184-13.)  Despite requesting and receiving additional time to respond (*see* ECF Dkt. Order Sept. 5, 2019), Plaintiff did not file an opposition or otherwise respond to Defendants' motion.  Accordingly, the Court is able to consider only Defendants' submissions to determine if their motion should be granted.  *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("[C]ourts, 'in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'") (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir.1993)).

**LEGAL STANDARD**

Plaintiff brought this action pursuant to 42 U.S.C. §

1983, which provides that:

> [e]very person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> . . . subjects, or causes to be subjected, any citizen
> of the United States . . . to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured . . . .

42 U.S.C. § 1983.  Section 1983 "is not itself a source of

substantive rights, but a method for vindicating federal rights

elsewhere conferred by those parts of the United States

Constitution and federal statutes that it describes." *Baker v.

McCollan*, 443 U.S. 137, 144 n.3 (1979).

To maintain a Section 1983 claim, a plaintiff must

allege two elements.  First, "the conduct complained of must

have been committed by a person acting under color of state

law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

Second, "the conduct complained of must have deprived a person

of rights, privileges, or immunities secured by the Constitution

or laws of the United States." *Id.; see also McCugan v. Aldana-

Brnier*, 752 F.3d 224, 229 (2d Cir. 2014).  A defendant moving

for summary judgment must "show[] that there is no genuine

dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a).

## DISCUSSION

As an initial matter, Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement, in numbered paragraphs, of material facts as to which the moving party contends there is no genuine issue to be tried."  Rule 56.1(a); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).  "Failure to submit such a statement may constitute grounds for denial of the motion."  Local Rule 56.1(a); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009) (the Rule 56.1 "requirement is strict").

Defendants submitted a Rule 56.1 statement that recites the procedural history of this action, and cites to supporting documents.  (ECF No. 184-3.)  Defendants' exhibits included Plaintiff's deposition transcript.  (ECF No. 184-8.)  Generally, a proper Rule 56.1 statement must do more, and set forth "material facts as to which [Defendants] contend[] there is no genuine issue to be tried."  Rule 56.1(a).

Although failure to comply with Rule 56.1 is grounds to deny a motion for summary judgment, *see, e.g.*, *Chiarelli v. Nissan N. Am., Inc.*, 2017 WL 2982974, at *2 (E.D.N.Y. July 12, 2017), Defendants have cited to supporting documents, including

6

the Plaintiff's deposition testimony regarding his claims.
Moreover, in the interest of judicial economy, the Court could
exercise its authority under 28 U.S.C. § 1915(e)(2)(B)(ii) to
dismiss any of Plaintiff's claims that fail to state a claim
upon which relief may be granted.[3]  Where, as here, a plaintiff
is proceeding *pro se*, courts are required to construe the
plaintiff's pleadings liberally.  *See, e.g.*, *Sealed Plaintiff v.
Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008); *McEachin v.
McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).  A *pro se*
complaint, however, still must state a claim to relief that is
plausible on its face.  *Mancuso v. Hynes*, 379 F. App'x 60, 61
(2d Cir. 2010).  Where a complaint fails to allege facts that
could give rise to a claim for relief, a court "shall dismiss
the case at any time" *sua sponte*.  28 U.S.C. §
1915(e)(2)(B)(ii); *see Milan v. Wertheimer*, 808 F.3d 961, 964
(2d Cir. 2015) ("To avoid *sua sponte* dismissal of a § 1983
claim, a plaintiff must allege that (1) the defendant was a
state actor, i.e., acting under color of state law, when he
committed the violation and (2) the defendant deprived the
plaintiff of 'rights, privileges or immunities secured by the

---

[3] Where a plaintiff is proceeding *in forma pauperis*, "the court shall
dismiss the case at any time if the court determines that the action
or appeal fails to state a claim on which relief may be granted."  28
U.S.C. § 1915(e)(2)(B)(ii).

Constitution or laws of the United States.'") (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743-44 (2d Cir.2003)).

## I.   Claims Upon Which Defendants Did Not Move for Summary Judgment

Defendants did not move for summary judgment with respect to twelve of the incidents alleged by Plaintiff, although Defendants dispute the allegations. (*See* ECF No. 184-9, Defendants' Memorandum of Law ("Mot."), at 2-3.)  The alleged incidents upon which Defendants are not moving for summary judgment are: (1) three instances of physical assault by corrections officers, (2) eight instances in which Plaintiff was not allowed to attend religious services, and (3) two instance in which Plaintiff was denied medical care.

Plaintiff alleged that corrections officers at RCF "physically assaulted" him on April 14, 2014 and November 3, 2015. (Compl. I at 18, 32-33; Compl. II at 22.)  The third physical encounter was an alleged sexual assault in which Plaintiff claims that a corrections officer "sexually touch[ed] [his] private parts" following a search on April 17, 2015. (Compl. II at 22.)  Plaintiff's allegations of assault by corrections officers, if proven at trial, could establish that his constitutional rights were violated. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("[T]he Eighth Amendment places restraints on prison officials, who may not, for example, use

excessive physical force against prisoners."); *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 238 (S.D.N.Y. 2005) (recognizing "a national consensus that any sexual assault of a prisoner by a prison employee constitutes cruel and unusual punishment").

Plaintiff further alleged that he was denied medical care following the alleged assault on November 3, 2015, and that he was also denied medical care on May 10, 2016, despite showing symptoms including "fever, headache, . . . vomiting, and diar[r]hea."  (Compl. II at 22, 40.)  If the allegations that Plaintiff was denied medical care are proven at trial, he could be entitled to relief if he can prove that prison officials were "deliberate[ly] indifferen[t] to [a] serious medical need[]." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).[4]

Furthermore, in this action, Complaint I alleged four instances in which Plaintiff was prevented from attending religious services (incidents on February 14, 2013; June 18, 2013; April 28, 2013; and August 17, 2013), and, in the consolidated action, Complaint II alleged four more instances (January 16, 2014; June 11, 2015; April 7, 2016; and April 24,

---

[4] Not all denials of medical care amount to deliberate indifference, and not all medical needs are "serious."  *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) ("The standard for Eighth Amendment violations contemplates 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'") (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).

2016).  (Compl. I at 20, 22, 25; Compl. II at 21, 23, 27, 42.)
If the allegations that Plaintiff was denied reasonable
religious accommodations are proven at trial, Plaintiff could be
entitled to relief for violations of the First and Fourteenth
Amendments if he can "demonstrate that the [religious] beliefs
professed are 'sincerely held' and in the individual's 'own
scheme of things, religious.'"  *Ford v. McGinnis*, 352 F.3d 582,
588 (2d Cir. 2003) (quoting *Fifth Ave. Presbyterian Church v.
City of New York*, 293 F.3d 570, 574 (2d Cir.2002).

        The Court must construe Plaintiff's allegations
liberally, *McEachin*, 357 F.3d at 200, and, as described above,
each of these alleged incidents could entitle Plaintiff to
relief.  Though Defendants have denied the allegations,
Defendants have not moved for summary judgment on the foregoing
claims, and the Court will not dismiss them at this time.

## II.  Claims Related to the Destruction of Plaintiff's Property

        Plaintiff's complaints contain numerous allegations
that corrections officers lost, damaged, or destroyed his
personal property.  Defendants have moved for summary judgment
on all of Plaintiff's claims that are based on these alleged
incidents.  (Mot. 3-4.)

        Whether or not Plaintiff has a valid constitutional
claim for the alleged destruction of his property by corrections
officers depends on whether a "meaningful postdeprivation

10

remedy" was available to him. *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018); *see also Jones v. Harris*, 665 F. Supp. 2d 384, 401 (S.D.N.Y. 2009) ("[W]here there is an adequate post-deprivation remedy to redress a seizure of property, no failure of due process claim lies—even if plaintiff was deprived of his property intentionally and without authorization."). "[T]he state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Plaintiff alleged that on at least one occasion, a corrections officer refused to provide him a grievance form, thus making it impossible for Plaintiff to exhaust his remedies within RCF. (Compl. I at 18.) The posdeprevation remedy, however, does not necessarily have to exist within the correctional facility. A "state law cause of action against defendants for negligence, replevin, or conversion which could fully compensate him for his alleged property loss" is considered a "meaningful postdeprivation remedy." *Cook v. City of New York*, 607 F. Supp. 702, 704 (S.D.N.Y. 1985); *see Riddick*, 731 F. App'x at 14 ("a prisoner's due process rights are not violated where adequate common-law remedies exist"). All of Plaintiff's claims regarding the alleged damage or destruction of his property could have been brought as New York tort law claims. *See Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455,

485 (E.D.N.Y. 2016) ("Under New York law, 'conversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property.'") (quoting *E. Coast Novelty, Inc. v. City of New York*, 781 F.Supp. 999, 1011–12 (S.D.N.Y. 1992)).

Because Plaintiff could have sought compensation for the alleged damage and destruction of his personal property under state law, Plaintiff has failed to state a claim that his constitutional rights were violated by the alleged destruction of his property. Defendants' motion with respect to Plaintiff's claims that Defendants lost, damaged, or destroyed his personal property is granted. *See Riddick*, 731 F. App'x at 14 (affirming dismissal of Section 1983 claim alleging "unauthorized destruction or damage of property by the state" where prisoner could have brought an "intentional tort claim . . . against the individual employees").

## III. Claims Related to the Plaintiff's Conditions of Confinement

Plaintiff alleged several incidents related to the conditions of his confinement. The majority of these incidents allege that prison officials occasionally failed to provide him with cleaning supplies, personal hygiene products, or a shower. Plaintiff also alleged instances in which he was denied recreation time, access to the law library, visitation rights,

and incidents of being asked to stand in his cell for 25 minutes
and being confined to his cell for more than one day.
Defendants moved for summary judgment on Plaintiff's claims that
are based on these alleged incidents, arguing that none meet the
standard for unconstitutional conditions of confinement
articulated by the Second Circuit in *Darnell v Pineiro*, 849 F.
3d 17 (2nd Cir. 2017).  (Mot. 4-5.)

Under *Darnell*, an inmate "may establish a [Section]
1983 claim for allegedly unconstitutional conditions of
confinement by showing that the officers acted with deliberate
indifference to the challenged conditions."  849 F.3d at 29.  In
order to do so, an inmate must establish two prongs: an
'objective prong' showing that the challenged conditions were
sufficiently serious to constitute objective deprivations of the
right to due process, and a 'subjective prong'—perhaps better
classified as a 'mens rea prong' or 'mental element prong'—
showing that the officer acted with at least deliberate
indifference to the challenged conditions."  *Id.*

The Court agrees with Defendants that, even if the
incidents alleged in the complaints are true, Plaintiff cannot
establish that his constitutional rights were violated by the
conditions of his confinement because the challenged conditions
are not sufficiently serious to satisfy the objective *Darnell*
prong.  The alleged conditions, such as a temporary lack of

cleaning and hygiene products, restrictions on the use of facilities such as the law library, and confinement to his cell are not "so atypical compared to ordinary prison life as to give rise to a protected liberty interest." *Allah v. Poole*, 506 F. Supp. 2d 174, 191 (W.D.N.Y. 2007); *see also Johnson v. Lappin*, 2006 WL 3743120, at *4 (S.D. Ill. Dec. 18, 2006) (failure to provide hygiene products "describes negligence" at most, "not deliberate indifference"), *aff'd*, 264 F. App'x 520 (7th Cir. 2008).

Therefore, Defendants' motion for summary judgment is granted with respect to Plaintiff's claims for constitutional violations based on the conditions of his confinement.

**IV.   Claims Related to Verbal Abuse by Prison Officials**

Plaintiff makes numerous allegations that corrections officers verbally abused him, including by directing racial slurs toward him.  Defendants argue that allegations of verbal abuse cannot state a claim for relief under Section 1983 for violations of Plaintiff's constitutional rights.  (Mot. 5-6.)

Defendants are correct that, despite the offensive nature of racial slurs, as a matter of law, Plaintiff is not entitled to relief on these allegations because "the mere allegation of verbal abuse, however repugnant it may be, does not rise to the level of a constitutional violation and is not cognizable under [Section] 1983." *Webster v. Fischer*, 694 F.

Supp. 2d 163, 187 (N.D.N.Y. 2010), *aff'd*, 398 F. App'x 683 (2d
Cir. 2010); *see also, e.g.*, *Purcell v. Coughlin*, 790 F.2d 263,
265 (2d Cir. 1986) ("claim that a prison guard called [the
plaintiff] names . . . was properly dismissed").

Therefore, Defendants' motion is granted with respect
to Plaintiff's claims based on alleged verbal abuse by
corrections officers.

## V.   Claims of Retaliation by Prison Officials

Plaintiff alleged throughout his complaints that many
of the alleged actions taken against him by corrections officers
were retaliation for the grievances he frequently filed, and the
lawsuits he brought in federal court.  Defendants moved for
summary judgment, arguing that the alleged retaliation did not
"deter[] the Plaintiff from exercising his constitutional
rights," given that "he filed between 100 and 200 grievances"
while he was detained.  (Mot. 6-7.)

Courts "properly approach prisoner retaliation claims
'with skepticism and particular care,' because 'virtually any
adverse action taken against a prisoner by a prison official—
even those otherwise not rising to the level of a constitutional
violation—can be characterized as a constitutionally proscribed
retaliatory act.'"  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.
2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir.2001),
*overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534

U.S. 506 (2002)).  "[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes*, 239 F.3d at 492).  Even if Plaintiff meets his burden, "his claim will still not survive summary judgment . . . if the defendants meet their burden of showing that there is no genuine issue as to the fact that [the plaintiff] would have received the same punishment even if they had not been improperly motivated."  *Id*.

Plaintiff met the first prong of the *Dawes* test because the filing of grievances by prisoners is a constitutionally-protected act under the First Amendment. *Davis*, 320 F.3d at 352-53.  Plaintiff also sufficiently alleged that Defendants took adverse actions against him.  For example, Plaintiff alleged that corrections officers prevented him from attending religious services on April 18, 2013 "in retaliation against [him] because [he] file[d] complaints against [them]," although he does not state when the complaints were filed. (Compl. I at 20.)  He testified that a corrections officer stated that the incident was a way "to give [Plaintiff] a hard time" due to the grievances he filed.  (ECF No. 184-8, Ex. F,

16

Tr. at 76:24-77:6.)  Plaintiff further alleged that corrections officers destroyed copies of his legal paperwork "by put[t]ing [them] inside of the toilet . . . because [he] had file[d] a previous lawsuit, civil rights complaint, against all of them." (Compl. II at 42.)  Plaintiff also alleged that corrections officers forced him to remain in his cell at times when others were allowed out "because [he] file[d] a grievance against their abuses."  (Compl. II at 32.)

Each of these alleged incidents, if proven to be causally connected to a protected act, could constitute unconstitutional adverse actions by Defendants.  *See Gill*, 389 F.3d at 381 (an "adverse action" is retaliatory conduct "that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights") (quotation and alteration omitted).  Even the verbal abuse and racial slurs allegedly directed at Plaintiff, while not actionable on their own, could constitute adverse actions for purposes of a retaliation claim if severe enough to have deterred an "individual of ordinary firmness" from filing grievances.  *See Shariff v. Poole*, 689 F. Supp. 2d 470, 479 (W.D.N.Y. 2010) ("verbal threats, false misbehavior reports and destructive cell searches" can be adverse actions because an "'act in retaliation . . . is actionable under § 1983 even if the act when taken for

17

different reasons would have been proper'") (quoting *Franco v. Kelly*, 854 F.2d 584, 588 (2d Cir.1988)).

Defendants do not proffer evidence showing that the alleged actions taken by corrections officers were not motivated by improper retaliation, nor evidence that Plaintiff would have received the same treatment regardless of motivation. Rather, Defendants presented evidence that Plaintiff was not deterred because he continued to file grievances throughout his time at RCF, and argue that, under *Dawes*, the claims cannot survive summary judgment because "there is no claim that the actions deterred the Plaintiff from exercising his constitutional rights." (Mot. 6-7.)

Defendants' argument misses the mark, because the question of whether "a similarly situated individual of ordinary firmness" would be deterred from exercising their rights is an objective one. "[T]his objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Gill*, 389 F.3d at 381; *see also Walker v. Pataro*, 2002 WL 664040, at *9 (S.D.N.Y. Apr. 23, 2002) ("The test, however, is not whether plaintiff . . . himself was chilled (if that were the standard, no plaintiff likely would prevail, for the very commencement of a lawsuit could be used by defendants to argue that the plaintiff was not chilled), but rather whether the retaliatory

conduct 'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional right.'"). Simply because Plaintiff "responded to retaliation with greater than 'ordinary firmness' . . . does not deprive him of a cause of action." *Gill*, 389 F.3d at 384.  Objectively, a corrections officer taking the actions alleged by Plaintiff could dissuade an "individual of ordinary firmness" from filing future grievances, if those actions were causally connected to the filing of the grievances.

Absent a showing that corrections officers' actions were not motivated by retaliatory motives, or that Plaintiff would have received the same treatment regardless of motivation, Defendants' motion for summary judgment on Plaintiff's retaliation claim is denied.  Because Defendants' Rule 56.1 statement did not provide evidence that would entitle Defendants to summary judgment on Plaintiff's retaliation claim, Defendants' motion is denied without prejudice to renew.  *See Searight v. Doherty Enters., Inc.*, 2005 WL 2413590, at *1 (E.D.N.Y. Sept. 29, 2005) (denying summary judgment motion without prejudice because the defendant "failed to submit the required 56.1 statement, [and] the Court [was] unable to adequately assess whether there exist any genuine issues of material fact").

## VI.   Claims Against Sheriff DeMarco and Warden Ewald

Defendants moved for summary judgment on all of Plaintiff's claims against Suffolk County Sheriff Vincent DeMarco and Warden Charles Ewald, arguing that Plaintiff did not allege that either individual was involved in the alleged constitutional violations.  (Mot. 7-8.)

"A plaintiff asserting a [Section] 1983 claim against a supervisory official in his individual capacity must allege that the supervisor was *personally involved* in the alleged constitutional deprivation." *Rivera v. Fischer*, 655 F. Supp. 2d 235, 237 (W.D.N.Y. 2009) (emphasis added).  In reviewing both of Plaintiff's complaints, all of the alleged incidents involved lower-level corrections officers, and nowhere does Plaintiff allege that either Sheriff DeMarco or Warden Ewald was "personally involved in the alleged" constitutional violations. *Id.*; *see Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Therefore, summary judgment is granted as to Plaintiffs' claims against Sheriff DeMarco and Warden Ewald.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion for partial summary judgment is granted in part and denied in part without prejudice.  The Court grants summary judgment on Plaintiff's claims that are based on the conditions of his confinement, the damage or destruction of his personal property, verbal abuse by prison officials, and all claims against defendants Sheriff Vincent DeMarco and Warden Charles Ewald.  Those claims are DISMISSED WITH PREJUDICE.  The Court denies without prejudice Defendants' motion for summary judgment on Plaintiff's claim for retaliation.

Defendants are directed to file a status letter by May 29, 2020 indicating whether Defendants will seek to re-file their motion for summary judgment on Plaintiff's retaliation claim accompanied by a proper Rule 56.1 statement, or proceed to trial.  Should Defendants decide to re-file, Plaintiff will have another opportunity to oppose the motion.

The Clerk of Court is respectfully directed to terminate Vincent DeMarco and Charles Ewald as defendants, to serve a copy of this Memorandum and Order on Plaintiff at his current address, and to note service on the docket.

**SO ORDERED.**

Dated:     May 21, 2020
           Brooklyn, New York

                                    /s/
                          Hon. Kiyo A. Matsumoto
                          United States District Judge